WOODS OVIATT GILMAN LLP
William F. Savino, Esq.
Bernard Schenkler, Esq.
*Attorneys for Allan Ratafia,*
*Ratafia & Company, CPA's P.C.,*
*and Bankruptcy Exchange*
1900 Main Place Tower
350 Main Street
Buffalo, New York 14202
Phone:     (716) 248-3210
Facsimile:  (716) 248-3310
Email: wsavino@woodsoviatt.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

In re:

    RONALD DERAMON,                     Bk. No.: 13-23260-RDD

                 Debtor.                        Chapter 13

## DECLARATION IN OPPOSITION TO MOTION FOR CONTEMPT

WILLIAM F. SAVINO declares pursuant to 28 U.S.C. §1746 as follows:

1. Until September 30, 2014, I was a partner in the law firm of Damon Morey LLP, attorneys herein for Allan L. Ratafia, Ratafia & Company, CPA's, P.C. (together "Ratafia") and the Bankruptcy Exchange, Inc., ("Bankruptcy Exchange"), who were joint creditors in this case.

2. This case was commenced on July 30, 2013 when the Debtor filed a Petition and Model Plan under Chapter 13 of the United States Bankruptcy Code.

3. As the dominant unsecured creditors in this case, Ratafia and Bankruptcy Exchange jointly objected, through me and my former law firm, to confirmation of said plan.

4. After the parties litigated this contested matter (including discovery), this Court entered an Order on August 6, 2014 granting the Debtor's Motion to Approve Stipulation Settling Objections Confirmation of Plan (the "Stipulation and Consent Order").

{3109475: }

5. As approved in the Stipulation and Consent Order, during early summer 2014 the parties negotiated a consensual Chapter 13 plan which would provide for the release to the Debtor of certain collateral he pledged for a bond he posted defending the pre-petition "State Court Action" against him by Ratafia, (Supreme Court, Westchester County, DeRamon, et al v. Ratafia, et al, Westchester County Index No. 63114/2012).

6. On October 1, 2014, 8 weeks after the Stipulation and Consent Order was entered, I resigned as partner in Damon Morey LLP and became a partner in the law firm of Woods Oviatt Gilman LLP.

7. Bernard Schenkler, Esq., who worked with me on this matter, moved with me from Damon Morey LLP to Woods Oviatt Gilman LLP.

8. This Court entered an Order on October 14, 2014 confirming the Debtor's Chapter 13 plan which provided, among other things:

> **BANKRUPTCY EXCHANGE, INC., JOHN O'NEILL, PATRICK O'NEILL, ALLAN RATAFIA, AND RATAFIA & COMPANY CPAS, INC.:**
> Pursuant to the Order Approving Settlement entered by this Court on August 6, 2014, the above referenced creditors are to be paid outside of the Debtor's Chapter 13 Plan as provided for in the approved stipulation.

9. Woods Oviatt Gilman LLP was substituted herein on June 11, 2015, after inadvertently learning of the Debtor's May 28, 2015 Motion Pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020 Holding Creditors Liable for Contempt and for Costs, Disbursements, Attorney's Fees and Sanctions (the "Contempt Motion").

10. Now, as counsel for Respondents, Ratafia, Bankruptcy Exchange and its principals, John and Patrick O'Neill, I make this Affirmation in opposition to the Contempt Motion.

11. Since summer 2013, I have been the lead attorney herein for Ratafia and the Bankruptcy Exchange.

12. Up to this Court's entry of the Stipulation and Consent Order, as lead counsel for Ratafia and the Bankruptcy Exchange, I had numerous conversations, e-mails and other communications with Andrea B. Malin, bankruptcy counsel for the Debtor. Because I considered this matter closed when I moved from Damon Morey LLP to Woods Oviatt Gilman LLP, I did not have the file moved with me at that time. Hence, when the Contempt Motion was mailed by Ms. Malin to Damon Morey LLP, I did not receive it.

13. Luckily, Mr. Schenkler noted the ECF filing so that he and I could get re-engaged by Ratafia and the Bankruptcy Exchange at our new firm and oppose the Contempt Motion.

14. The first exhibit hereto, **Exhibit "A"**, is an e-mail string from May 30 and June 1, 2015, between me, Ms. Malin and Roderick E. de Ramon, brother of the Debtor and the attorney who negotiated the Stipulation and Consent Order with me in 2014.

15. As can be seen from Exhibit A, Ms. Malin admits that Roderick de Ramon tried to get responses regarding execution of the subject stipulation vacating the bond from Ratafia's counsel in Ratafia's State Court Action, Robert Steckman, but could not get Mr. Steckman to respond as requested.

16. Roderick de Ramon's statement in Exhibit A is critical: "My brother [Ronald de Ramon] even called a court conference pro se (state court months ago) and then we got involved and reviewed this matter and Ratafia's lawyer, Steckman, was argumentative and resistant to releasing the bond notwithstanding the clear and unambiguous terms of the Settlement Agreement."

17. **Exhibit "B"** is the December 6, 2014 letter from the Debtor, "Ronald de Ramon", acting pro se, to the state court, Justice Alan D. Scheinkman, as referenced by Ronald's brother,

{3109475: }

3

Roderick, in Exhibit A. The Debtor's letter was stamped filed December 9, 2014 and docketed with the Westchester County Clerk in the NYS CEF on December 10, 2014.

18. In his December 6, 2014 letter, the Debtor admitted he could not afford to retain an attorney to "request an order regarding the bond" and that his bankruptcy counsel refused to "file a motion or other request with your court."

19. Furthermore, the Affidavit of Allan L. Ratafia, submitted concurrently with this Declaration, establishes that Steckman did not report to his client his conversations with Roderick de Ramon, Esq., and Ratafia was not aware until advised by me that any Stipulation Vacating Bond was still required.

20. The next exhibit, **Exhibit "C"**, is an e-mail from Roderick de Ramon to me following up on my telephone conversation with Ms. Malin. As can be seen in that June 8, 2015 e-mail from the law office of Roderick de Ramon, the Stipulation Vacating the Bond was forwarded to Robert Steckman on March 31, 2015. Roderick de Ramon's initial transmission of the Stipulation Vacating Bond was 8 months after the Stipulation and Consent Order was entered.

21. The June 8, 2015 e-mail from Roderick de Ramon continues, "Mr. Steckman advised during the last State Court telephone conference that he was not in favor of having the bond vacated notwithstanding the clear terms of the Stipulation filed with the bankruptcy court. Thus far, he has not indicated any willingness to be cooperative in this matter." As is indicated below, Mr. Steckman also admitted to me that he was uncooperative because he was owed fees and unwilling to act in his clients' best interest until paid.

22. Exhibit C ends by Roderick de Ramon asking that the Stipulation Vacating Bond be signed by Mr. Steckman.

{3109475: }

4

23. **Exhibit "D"** is an e-mail string that begins with the e-mail in Exhibit C and continues through June 12, 2015. In Exhibit D, Bruce Dunn, the attorney who appeared for the Debtor in the State Court Action advises that my substitution for Damon Morey LLP which I had sent him was insufficient to get the Stipulation Vacating Bond filed in the State Court Action because it was not a substitution as to Mr. Steckman.

24. **Exhibit "E"** is an e-mail string that begins with Exhibit C and ends with an exchange between Roderick de Ramon and me on June 12, 2015. In my e-mail to Roderick de Ramon, I state that, "you have known since 2013 that I have been acting for your adversaries. You never tried to reach me. As you can see by my swift action, no motion would have been needed if you simply extended me the courtesy of a call. Thus, the motion could have been obviated by your continuing our direct contact that we established in prior years. Where you caused this problem, I doubt my clients will pay for unnecessary legal work. Nevertheless, please advise of your 'ask'."

25. Thereafter, negotiations did ensue which negotiations were unsuccessful but remain privileged

26. **Exhibit "F"** is an e-mail string that begins with Exhibit C and ends with a lengthy e-mail from Roderick de Ramon to me. Although Roderick de Ramon's 12:56 P.M. June 12, 2015 e-mail to me was largely self-serving, certain key statements therein about Mr. Steckman need to be included within the record such as "Steckman argued strenuously about having to release the bond (and given his history I was not surprised that he was going to resist complying).... we then assembled all of the papers and Bruce Dunn sent them to Steckman along with the Stipulation to Vacate the Bond. Despite repeated follow-ups, there was no reply by Steckman. In fact, we still haven't heard anything from him even after filing the motion (although I am not surprised)."

{3109475: }

27. Thus, Roderick de Ramon corroborates that Mr. Steckman, purportedly because of his being due money, failed to act for his client or to even show the professional courtesy of responding to opposing counsel.

28. Over the following several weeks, Woods Oviatt Gilman LLP, through Ratafia and directly, tried to remove Steckman as an obstacle by substituting itself for him. Exhibit G includes the e-mail from our paralegal to Mr. Steckman of July 13, 2015 asking Mr. Steckman to consent to change attorneys and his response that I should call him and then my further response confirming that I left a voice mail with him.

29. **Exhibit "H"** is an e-mail I authored summarizing my heated July 14, 2015 conversation with Mr. Steckman. This is attorney-client communication submitted without general waiver of privilege.

30. Minutes after I spoke with Mr. Steckman, I memorialized for my clients in Exhibit H the conversation with him as follows: "Steckman refuses to sign anything until he is paid what he claims is due for services to Allan. I told him I would have him fired so they can no longer act as a road block, but he kept demanding money. I reminded him that his failure to release the bond has caused damage that may be shifted to his clients, but he kept demanding money. I pointed out that was extortion, but he kept demanding money. Allan needs to fire him today or tomorrow…."

31. Attached as **Exhibit "I"** includes the e-mail from Mr. Ratafia to Mr. Steckman terminating Mr. Steckman as his attorney and my e-mail forwarding same to Ms. Malin to demonstrate the efforts by my clients and me to release the bond.

32. **Exhibit "J"** is my e-mail to Mr. Roderick de Ramon reporting my conversation with Mr. Steckman. In Exhibit J, I note that "Mr. Steckman has been holding everyone hostage since last year."

33. **Exhibit "K"** is the Notice of Appearance by Woods Oviatt Gilman LLP filed in the NYS CEF docket on July 15, 2015.

34. **Exhibit "L"** is my correspondence to Justice Scheinkman dated July 16, 2015 together with the Notice of the Proposed Stipulation to be So Ordered which Stipulation would provide for the release of the bond.

35. **Exhibit "M"** is the Stipulation that was so Ordered and entered in the NYS CEF docket on July 22, 2015 vacating the bond.

36. Finally, **Exhibit "N"** is the Stipulation of Discontinuance field with the state court clerk on August 12, 2015. I prepared the Stipulation, obtained the consent of Plaintiff's attorney filed the discontinuance.

37. As further argued in the Memorandum of Law, the contempt motion was not necessary. Debtor's bankruptcy counsel could have called me and, as set forth herein, I promptly addressed the refusal by Steckman to execution the stipulation vacating the bond, I counseled the client to fire him, I appeared in Steckman's stead in the state court proceeding and executed the stipulation and transmitted it to Justice Scheinkman to be so-ordered.

38. Further, as set forth in the opposing declarations of the O'Neill's and Ratafia, they were not aware that Steckman refused to cooperate until the contempt motion was served. They never instructed Steckman not to cooperate.

39. Further, as evidenced by the chronology herein, including the Debtor's December 6, 2014 letter to Justice Scheinkman and the transmittal of the proposed stipulation by Roderick de Ramon on March 31, 2015 to Steckman, eight months after the Stipulation and Consent Order was entered, most of the delay in having the bond vacated is attributable to the Debtor himself.

40. For these reasons, and the reasons set forth in the opposing Declarations and the Memorandum of Law, the Debtor's motion for contempt sanctions should be denied.

{3109475: }

41. I declare that the foregoing statements are true under penalty of perjury.

Dated:  Buffalo, New York
        August 19, 2015

                                                    s/ William F. Savino
                                                    William F. Savino

Doc #1850649.1

{3109475: }